# CASES

ADJUDGED IN

# THE COURT OF CHANCERY

## OF THE STATE OF NEW JERSEY.

### FEBRUARY TERM, 1853.

---

DANIEL CRANE and wife and others, complainants, and STEPHEN VAN DUYNE, JOHN DEY and wife and others, defendants.

1. A testator devised to his wife the use of his personal and real estate as long as she remained his widow, or during her natural life. At her death, or if she married, then at her marriage, all the real estate and the residue of the personal estate was to be divided equally among the testator's children. The wife married again, and since that time to the filing of the bill, with her husband, remained in the actual possession of the larger portion of the real estate, and they received the rents from the person occupying the residue.

2. *Held*, that they must account for the rents and profits of all the real estate of which the testator died seized, since the date of the marriage.

3. That they could not claim an allowance for improvements put upon the estate, and for moneys paid for the tillage, care and culture of the land by the widow, during her widowhood.

4. If a *feme sole* being an executrix or administratrix, wastes the goods of her testator or intestate, and then marries, her husband is liable, as long as the coverture lasts, for the *devastavit*.

5. So where the administratrix, for a valuable consideration, had *bona fide* transferred obligations belonging to the estate of the testator to one with whom she subsequently intermarried, he has no right to retain them as his own, but must be held accountable with her for all the property which came to her possession.

6. The testator gave the use of all his property, except a small legacy to his widow, and the amount was amply sufficient for her own comfortable support and the maintenance of the children. It was held that the intention of the testator was, that with the use of the property devised to his widow, she should take care of the children; and that she could not claim an allowance for the care, support and maintenance of the children, during their minority, and from the testator's death to the time of her marriage.

7. All the personal property in the inventory, other than some articles transferred to the children of the testator, remained in specie upon the premises, except a portion thereof, which, *from its nature, was consumed in the use,* and *some live stock that died from disease.*

8. *Held,* that this personal property being appropriate and necessary for the enjoyment of the real estate, was legitimately used for that purpose; that when the testator left his widow the *use* of both personal and real property, he did not intend that the personal property should be sold at his death. But the executrix, before she married, should have exhibited her account. As to the property which was necessarily consumed in its actual use upon the premises, and the live stock which perished from disease, allowance was made, at their appraised value. As to the residue, it was held that there was no necessity of selling it, as the executrix and her husband, by continuing in the use of it after the termination of her estate *had converted it,* and *must account for it at its appraised value.* They might have claimed an allowance for its depreciation, if they had not assumed the ownership after their marriage.

----

The bill was filed October 2d, 1852.

It charges that Nicholas Van Duyne, late of the county of Morris, died on or about the 30th of October, 1842; that at the time of his death he was seized of several tracts of land lying in that county, of about one hundred acres, and was possessed also of a considerable amount of personal property, consisting of household furniture, farming utensils, grain, stock on his farm, debts due to him, &c. That he died, leaving Hannah Van Duyne, his widow, and Stephen Van Duyne, Catherine Ann, (since intermarried with the complainant D. Crane,) Silas, Elijah, James, Albert and Martin, his children, surviving him.

That by his will, after directing the payment of his debts, &c., he devised as follows: "I give to my beloved wife, Hannah Van Duyne, the use of all my personal estate of every name and kind, as long as she remains my widow, or during her natural life, with the exception of the sum of four hundred dollars, which I shall hereafter mention. Further, I give and bequeath to my beloved wife, Hannah Van

Duyne, the use of my real estate as long as she does remain my widow, or during her natural life. Item. I give and bequeath to my son Stephen Van Duyne, the sum of $400 of my personal estate. Item. I give and bequeath, after the widowhood or death of my said wife, that all my real and personal estate to Stephen Van Duyne, Catherine Ann Van Duyne, Silas Van Duyne, Elijah Van Duyne, James Van Duyne, Albert Van Duyne and Martin Van Duyne, to be divided among them share and share alike, and therein and thereby appointed his widow, the said Hannah Van Duyne, and Stephen Van Duyne, executors thereof."

That the executors proved the will; that the appraisement of debts due the estate amounted to two thousand four hundred and fifty-three dollars and seventy-five cents, and the personal property to seven hundred and ninety-one dollars and ninety-seven cents.

That all the estate, except the legacy of four hundred dollars, which was paid to Stephen, went into the possession of the executrix, as also the title deeds of the real estate; that the executrix threatened to waste the estate, and that she has wrongfully converted considerable part of the personal estate.

That for several years John Dey lived with the executrix as a laborer on the farm, and that in February, 1850, they were secretly married.

That John Dey has possessed himself of the personal estate and effects of the testator, and claims the same as his own, and has entered upon the real estate and taken the rents and profits, and the title deeds, &c.; that within a year past he has received payment of a bond and mortgage given by one Samuel Dey to the testator, for one hundred dollars; and has in his possession and claims as his own a promissory note made by John A. Hopper, for three hundred and forty dollars, which was given for a debt due the testator, and which note was assigned to John Dey by the executrix, before marriage.

That said Dey has in his possession a note or bond given to him by one George W. Van Duyne, for the sum of one

hundred dollars secured by a mortgage, and also a note or bond given by Moses Young, for one hundred dollars, secured by mortgage ; also, a note of one Everett, for one hundred dollars; also, a note of one F. Vanness for fifty dollars, all of which were given for moneys originally belonging to the estate of testator, and have been placed in the hands of John Dey, by his wife, the executrix, to get them out of reach ; that said Dey is a man of no responsibility.

That the defendants refuse to account for the estate of said testator.

That James Van Duyne, Albert and Martin refuse to join in the bill, and are therefore made defendants.

The prayer of the bill is that an account may be taken, and the estate settled in this court, and in the meantime John Dey and his wife may be restrained from collecting, &c., the notes and bonds hereinbefore mentioned, or any other securities of the estate, &c., &c.

On the 17th May, 1852, the defendants John Day and his wife, filed their joint and several answer.

They admit the will, its proof, and the appraisement and inventory filed ; that the debts due the estate were appraised at two thousand four hundred and thirty-eight dollars and forty-seven cents, and the personal estate other than said debts amounted to eight hundred and forty-seven dollars and twenty-five cents.

They allege that there was a mistake made in taking the inventory ; that the inventory contains two notes of John A. Hopper, one for one hundred and sixteen dollars and eighty-five cents, and the other for three hundred and seven dollars and fifty cents, whereas there was only one note, amounting, with interest, to three hundred and forty-four dollars; that H. afterwards paid the executrix the interest due on this note and gave the executrix a new note for three hundred and forty dollars.

They set out several large payments made on account of the estate, and Hannah, (the executrix,) then admits that

all the rest of the estate came to her possession, and under her control, except such articles as were consumed and used in the family, and for their support, and a cow set off to Silas, one cow set off to Elijah, one horse set off to Albert, one cow, bed and bedding, set off to Catherine Ann Crane, and twenty dollars in money paid her, one horse sold to John Dey, and one of the cattle and one of the sheep which died of disease.

Admit the receipts of the rents and profits of the real estate, and that the defendant Hannah has the title deeds.

The answer sets forth that the complainant Catherine Ann, when seventeen years of age, secretly married the complainant Crane, and that she and husband lived with her (the executrix) from February until May, and that then the bed, bedding and cow were set off to her; that she lent them another cow for a year, supplied the family with grain and flour, and kept the two cows for them.

The executrix, by the answer, further sets forth that Silas and Elijah, two of the children, remained with and were supported and educated by the mother from their father's death until the autumn of 1847, when she, said executrix, removed temporarily to Newark, and took with her Albert, James and Martin, and maintained and supported them, and provided them with board, clothing and education; that she then returned with them to Morris, and has educated and maintained them up to the time of filing the answer. She insists that, in taking the account of the estate, and the amount due to Daniel Crane and wife, and to Elijah, Silas, James, Albert and Martin, respectively, the true value of said care, support and maintenance should be ascertained, and allowance made therefor from their respective shares.

The defendants state that the executrix has expended fifty dollars in money in settling the estate, which should be allowed, together with one hundred and fifty dollars as commissions.

The defendants further allege that the goods and chattels, and all the personal property in the inventory men-

tioned, other than debts due and owing, still remain in specie upon the premises, and in the possession of executrix, except the portion consumed in the use, and that stated as set off to the children, and the cattle and sheep that died from disease, and the horse sold to Dey; and they insist that the residue thereof, and the said personal estate in specie, ought to be taken at the full value, as stated in the inventory, and the residue sold, and the proceeds taken in full discharge, &c.

The defendant Hannah states that she employed John Dey (now her husband) to manage and till the farm, at ten dollars per month, and he was so employed from the year 1844 until 1850; that on the 11th February, 1850, a settlement was had, for which, up to that time, he had received only about one hundred and twenty dollars, of which the horse before mentioned made seventy dollars; that upon the settlement, there was found due him five hundred and sixty dollars, and that, towards the payment of that sum, the defendant Hannah, as executrix, transferred to him the Hopper note, then amounting to the sum of three hundred and fifty-five dollars and thirty cents, also the bond of Samuel Dey, then amounting to the sum of one hundred and three dollars and fifty-eight cents, and that the executrix ought to have this allowance against the estate generally, or against the respective shares of Silas, Elijah, James, Albert and Martin.

The defendant Hannah denies squandering the estate, or threatening to do it, or of converting any of the estate to her own use, contrary to the will, and declares she is, and always has been, ready to account, and is ready to account for the Hopper note, the Dey bond, and the horse, if it is right she should do so, and has repeatedly offered to some of defendants to account for the estate to their satisfaction; that the estate is well invested on interest.

The defendants deny ever having refused to deliver up the title deeds, or to account for the estate.

John Dey denies he has any of the estate, except the Hopper note and Dey bond; that he received the same in

Crane et al. v. Van Duyne et al.

good faith, for the consideration stated, and without the knowledge that it belonged to the estate, and he insists on his right to retain them; he denies having received any of the rents and profits, but admits he has worked and lived upon the said lands, but without any compensation therefor than his living and support out of the same. He denies ever having had, as charged in the bill, a note or bond of Van Duyne, or the note or bond of Young, or the note of Everett or of Vanness; but he admits that after his marriage, the said Hannah, in making a change of the securities, the same were executed in the name of the defendant, John Dey, but the same remained in the possession of his wife.

The defendant Hannah answers that the bond and mortgage of Van Duyne, the bond and mortgage of Young, the bill of sale of Everett, and the note of Vanness were given as securities for moneys loaned by her, and which was her own money, and no part of the estate, earned by her from the use of the estate in part, and from her own industry since the testator's death.

To this answer is annexed a schedule of account containing the charges and discharges of the executrix.

*Mr. Little* argued for the complainants, and cited *Covenhoven and others* v. *Schuler and others*, 2 *Paige* 122; 1 *Story's Eq.*, § 604 (*note*); *Debo* v. *Titus*, 5 *Hal.* 129.

*Mr. Chandler*, for defendants Dey and wife, cited *Wilkes and wife* v. *Rogers and others*, 6 *Johns. R.* 566; *In the matter of S. F. Bostwick*, 4 *Johns. Ch.* 100; *Allen* v. *Coster*, 17 *Eng. Ch. Rep.* 204.

THE CHANCELLOR. There is no difficulty in the construction of the will. The widow was entitled to the *use* of the real estate during her life, if she remained unmarried. If she married, her interest then terminated. Of the personal estate, a legacy of four hundred dollars was first to be paid out of it to the testator's eldest son, Stephen Van Duyne,

and the use of the residue was given to the widow on the same terms that she was to enjoy the real estate. At her death, or if she married, then, at her marriage, all the real estate and the residue of the personal estate were to be divided equally among all the testator's children, being seven in number.

The defendants John Dey and Hannah, his wife, must account. The only questions involved in the case which are in controversy between the parties are, as to some principles applicable in taking the accounts. The complainants, not having put the facts alleged in the answer at issue, they must be taken as true.

The bill alleges, and the answer admits that Stephen Van Duyne, the executor named in the will, has not intermeddled with the real estate, and that no part of the personalty came to his hands or within his control, except the sum of four hundred dollars, and which he was entitled to as his legacy.

The defendant Hannah, the executrix of the will, intermarried with John Dey on the 20th of February, 1850. They admit that, since then, they have been in the actual possession of the larger portion of the real estate, and have received the rents from the persons occupying the residue. They must account for the rents and profits of all the real estate of which the testator died seized, since the 20th of February, 1850.

In taking this account, they claim an allowance for improvements put upon the estate by the defendant Hannah, during the period between the death of the testator and her marriage, and for money paid for the tillage, care, and culture of the land.

They are not entitled to such allowance. As to the improvements, they might have been proper and necessary for the full enjoyment of the estate, and doubtless have contributed to its permanent value. But the devisee terminated her estate by her own will. By the terms of the devise, she was entitled to the real estate during her life, if she remained unmarried. She accepted the estate, in lieu of her dower, upon the conditions annexed to it. There is

Crane et al. v. Van Duyne et al.

nothing in the case which, as a matter of equity, entitles the defendants to an allowance for the improvements.

As to the moneys expended for the care and culture of the land, such expenditures were made for the devisee's own benefit. She occupied the land, and for the moneys expended in its care and cultivation enjoyed its products. She was entitled to the use of it, but not to cultivate it at the expense of the children.

In accounting for the personal estate, the defendants are entitled to have the mistake as to the Hopper note, which is alleged to have been made in taking the inventory and appraisement, corrected, without further proof. The circumstances of the mistake are set out in the answer, and the defendants offer to prove the error. The complainants have not afforded them an opportunity of doing so, by putting the facts affirmed by them in issue by a replication. Taking the circumstances stated as true, the mistake is apparent.

The payment made to Kitty De Hart, and the amount paid as a compromise to Anthony Young, under the facts stated in the answer, are proper for allowance, as likewise the sum of money paid to John Van Wagoner.

The defendants claim an allowance for one cow set off to Silas Van Duyne; one cow to Elijah ; one horse to Albert; and a cow, bed and bedding set off to Catherine Ann. The only objection to these allowances is in the fact that these children were under age at the time they respectively received the property. The property was left by the testator, and is contained in the inventory and appraisement. The defendants being entitled to the full benefit of their answer, it is to be conceded that the advances were made to the children in good faith, and that they have had the full benefit of the property. Under these circumstances, it appears to me equitable that, in taking the accounts, these children should be respectively charged with these articles.

The defendants claim a further allowance of five hundred and sixty dollars, paid by the executrix to John Dey previous to their marriage.

The answer in reference to this claim states that, after the testator's death, it was necessary that some one should be employed to take charge of the real estate, and cultivate the land ; that she employed Dey for this purpose, at a price of ten dollars a month, and that his wages amounted to the sum of five hundred and sixty dollars, which she paid him, by selling him a horse belonging to the estate, valued at seventy dollars, and the residue in obligations which came into her hands as executrix. I have already stated that the executrix had no right to appropriate the property for any such purpose. Dey insists that the obligations having been transferred to him *bona fide*, and for a valuable and ample consideration, and as he did not know, at the time of their transfer, that they belonged to the estate of the testator, he has a right to retain them as his own. If he was otherwise a stranger to this suit, the fact of his having received the obligations without the knowledge of their belonging to the estate of the testator, might perhaps protect him. But he is made a defendant in this suit, not because the obligations were transferred to him, but because he is the husband of the executrix, and as such must be held accountable with her, as long as the coverture lasts, for all the property which came to her possession as executrix, no matter whether it came to his hands or not. " If a *feme sole*, being an executrix or administratrix, wastes the goods of her testator or intestate, and then marries, her husband is liable, as long as the coverture lasts, for the *devastavit*." 2 *Williams on Executors* 1128, *and note L ; Knox* v. *Picket*, 4 *Dessaus. R.* 92 ; *Moon* v. *Henderson*, 4 *Dessaus. R.* 459. The defendants must be charged with the five hundred dollars.

· The defendants further claim an allowance for the executrix for the care, support and maintenance of the children during their minority, and from the testator's death to the time of the marriage.

The executrix, as the mother of these children, was under a moral obligation to maintain and educate them, and to devote her property and industry for the purpose. It is true, where children have a separate estate from their mother, a

Court of Chancery has the power, and will, in a proper case, make an order for an allowance out of their own estate for their support and education ; or will, in the settlement of the accounts, allow for such past expenditures, although made without an order of the court.   In the case of *Wilkes and wife* v. *John Rogers and others*, 6 *Johns. R.* 566, which was then decided on an appeal from the Chancellor, the Chancellor had decided that the charge for the maintenance and education of the children, made in that case by the executrix, who was their mother, could not be allowed, because .the charge was not deduced from a previous order, and the Chancellor, in his opinion, cites the numerous authorities applicable to the subject.   But the Court of Errors reversed the Chancellor's decision, and decided that the mother was entitled to be allowed, out of the portion of the estate belonging to the children, for their maintenance during infancy.   But in that case, the judges, in their opinions, admit that such allowance is not in accordance with the general rule.   But the circumstances of that case made it an exception to the rule.

But what propriety or equity would there be in such allowance in the case before us?   The father of these children, placing implicit confidence in his wife, and believing that the interest and care of his children could be safely committed to her, secured by a mother's affections, had not left them, by his will, anything to supply their then present wants.   The use of all his property, except a legacy of four hundred dollars, he gave to his widow.   This, with some property she possessed of her own, proved amply sufficient for her own comfortable support and the maintenance of her children.   She shows, in her answer, that from this property she had been able, over and above supplying these necessities, to accumulate several hundred dollars.   The intention of the testator was, that with the use of the property devised to his widow, she should take care of his children. It was never his intention that she should have the use of it for her own benefit, and a resort be had to the principal for the maintenance of the children.

As to the bond and mortgage of G. W. Van Duyne and that of Young, the bill of sale given by Everett, and the note of Vannest—taking the account given of them in their answer as true—they constitute no part of the estate.

Only one other question remains to be settled. The defendants state in their answer that all the goods and chattels, and all the personal property mentioned in the inventory and appraisement, other than the debts therein mentioned as due and owing to the estate, still remain, in specie, upon the premises, except a portion thereof, which, from its nature, was consumed in the use; some live stock, which died from disease, and the horse, cow, &c., transferred and delivered to the children, as before referred to. The defendants insist that they are entitled to an allowance for the property that was consumed in the use, and that perished, and that the residue must be sold, and an allowance be made the executrix for any deficiency there may be between the amount the property was appraised at and the sum it may bring at such sale.

The complainants, on the other hand, insist that it was the duty of the executrix to have sold all this property when she assumed her duties as executrix, and to have invested the money so that she might have received the benefit of its income, and her children the principal, when, by the terms of the will, they should be entitled to it.

In the case of *Covenhoven* v. *Souler*, 2 *Paige Ch. R.* 132, Chancellor Walworth says: " Whether a gift for life of specific articles, as of grain, hay, &c., which must necessarily be consumed in the using, is to be considered an absolute gift of the property, or whether they must be sold and the interest or income only of the money applied to the use of the tenant for life, appears to be a question still unsettled in England." 3 *Ves.* 314; 3 *Mer.* 194. But none of these principles in relation to specific bequests of particular articles, whether capable of a separate use for life or otherwise, are applicable to this case. When there is a general bequest of a residue for life, with a remainder over, although it includes articles of both descriptions as well as other

property, the whole must be sold and converted into money by the executor, and the proceeds must be invested in permanent securities, and the interest or income only is to be paid to the legatee for life. This distinction is recognized by the master of the rolls in *Randall* v. *Russell*, 3 *Mer. R.* 193.

These rules are all very well where there is any doubt as to the intention of the testator. If we can ascertain that intention with any reasonable certainty, it must prevail over any technical rule. This bequest of the personal property included articles which, from their nature, would be consumed in their use, and of which the use and the property could have no separate existence. The testator left his widow with a large family of young children. He left her the *use* of all his personal property, except four hundred dollars, and the *use* of all his real estate. This personal property in question was appropriate and necessary for the enjoyment of the real estate. It was used legitimately for that purpose, and these children enjoyed, with their mother, the benefit of it. Of some of it the use consisted in its consumption, and the residue was only depreciated in value by its use. The testator made the legatee his executrix and placed the specific property in her hands. She ought to be called to a strict account for all this property, and I do not intend to lay down any rule by which she can escape. But I do not believe it was the intention of the testator that this property should be sold at his death. The executrix, when she made up her mind to marry, ought to have stated and exhibited her accounts, and put the estate in a condition for settlement, according to law. Her dealings with the man she intended to marry; the transferring to him of upwards of five hundred dollars of the property committed to her trust; her husband and herself remaining in the use of all the real and personal estate after her term and interest in it had expired; these circumstances do not incline me to extend any leniency to these defendants in taking the accounts.

As to the property which was necessarily consumed in its actual use upon the premises, and the live stock which

perished from disease, an allowance must be made at their appraised value.

As to the residue, the defendant Dey and his wife have converted it to their own use. There is no necessity of selling it. Having assumed the ownership of it, the defendants must account for it at its appraised value. The executrix might, under other circumstances, have been entitled to an allowance for its depreciation. The conduct of the defendants, in assuming the ownership of it after their marriage, must deprive them of this benefit.

Let it be referred to a master to take and state the accounts upon the principles laid down. In addition to the allowances before mentioned, let an allowance be made for moneys expended by the executrix, in the discharge of her duties, not to exceed fifty dollars, and a sum for commissions, not to exceed one hundred and fifty dollars. These sums are the extent of what she claims in the answer.